IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**EXSO CHANDLER**                                                                           **PLAINTIFF**

**v.**                                                                          **No. 4:12CV42-A-A**

**THELMA THOMPSON**                                                     **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Exso Chandler, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The defendants have filed a motion [Doc. 37] for summary judgment. Chandler has responded [Doc. 39], [Doc. 45], [Doc. 46] to the motion, and the defendants have replied [Doc. 47], [Doc. 48]. Chandler has presented an additional brief [Doc. 49] in opposition to the motion for summary judgment. The matter is ripe for resolution. For the reasons set forth below, the motion [Doc. 37] for summary judgment will be granted in part and denied in part.

**Factual Allegations**

Exso Chandler is an inmate in the custody of the Mississippi Department of Corrections ("MDOC") and housed at the Mississippi State Penitentiary ("MSP"). He alleges in his complaint that the defendants have violated his constitutional rights. In January 2012, at Building 26-A, Corrections Officer Thelma Thompson became angry and verbally abused Chandler. Chandler had never seen her that angry before, though it seemed that her demeanor changed after Christmas and has continued. The other inmates in Unit 26-A noticed the change, but no one could determine what triggered it. She took out her unidentified frustrations on many inmates in her charge, issuing numerous rule violation reports, even for the most minor infractions. Chandler wrote Deputy

Commissioner Emmitt Sparkman about Thompson's actions. Afterward, she wrote four Rule Violation Reports against him over a period of nine months, which Chandler believes were baseless. Each time he complained to her about it, she said, "You're the jailhouse lawyer. Write it up." One time, after a shakedown of the unit was complete, Thompson searched Chandler's locker a second time and threw his belongings around his cell, stating, "You know the law; write it up." In addition, on February 12, 2012, Thompson would not mail a Valentine Chandler had written to his granddaughter. Thompson said that the letter was contraband, but Chandler believes inmates are permitted to send such letters under Mississippi Department of Corrections policy. Chandler made the card with a pencil and pen (which he believes are permitted), not with colored pencils and markers (which he believes are not permitted). Chandler claims that he notified Defendant Clarissa Williams, Thompson's supervisor, of the harassment and that she failed to supervise Thompson properly. Chandler seeks both injunctive relief and compensatory and punitive damages for violations of his constitutional rights and emotional distress.

On July 18, 2013, the defendants filed a motion [Doc. 37] for summary judgment in which they challenged the merits of the plaintiff's claims, as well as asserted the defenses of immunity under the Eleventh Amendment and Qualified Immunity. Chandler then filed his Response [Doc. 39], [Doc. 45], [Doc. 46] to the motion for summary judgment, arguing the following in opposition:

    a.    Plaintiff's claim for retaliation is not just about Defendant Thompson's one-time refusal to mail his personal mail that she considered contraband, but also about multiple "false" Rule Violation Reports issued to him by Defendant Thompson as well.

    b.    Defendants have failed to produce all documents related to complaints made by other inmates about Defendant Thompson in violation of Court Order [Dkt #23] and Plaintiff knows of other inmates' complaints about Thompson because he has written some of them.

    c.    Plaintiff possesses an Equal Protection Claim against Defendant Thompson that has not been addressed.

Chandler argues in his response that there were multiple "false" Rule Violation Reports ("RVR's") that demonstrate retaliation by Thompson, attaching four RVR's numbered 01218109, 01219779, 01220772, and 01291021. [Doc. 46-1] at 9-12.

RVR No. 01218109 was issued by Defendant Thompson to Chandler on April 24, 2012, alleging that Chandler refused to clean up around his bed. An investigation was conducted at Chandler's request and a hearing held by a hearing officer. Chandler was found guilty and given eight (8) hours of "extra-duty". [Doc. 46-1] at 9.

RVR No. 01219779 was issued by Defendant Thompson to Chandler on July 26, 2012 for sleeping on the floor in violation of prison rules after two (2) warnings. An investigation was conducted, a hearing held by a hearing officer, and Chandler was found guilty and given eight (8) hours of "extra duty". *Id*. at 10.

RVR No. 01220772 was issued by Defendant Thompson to Chandler on September 2, 2012, for smoking a cigarette in violation of prison rules. An investigation was conducted at Chandler's request. He denied smoking – alleging that the cigarette was someone else's and that he just put it out with his foot. A hearing was held by a hearing officer and Chandler was found not guilty. *Id*. at 11.

RVR No. 01291021 was issued by Defendant Thompson to Chandler on December 24, 2012 for smoking in violation of prison rules. An investigation was conducted at Chandler's request, and a hearing was conducted with a hearing officer. Chandler was found guilty and was punished by losing telephone, canteen and visitation privileges for thirty days. *Id*. at 12.

The defendants replied [Doc. 47], [Doc. 48] in support of the motion for summary judgment, and Chandler submitted another brief [Doc. 49] in opposition to the motion. Chandler has since been moved to another unit where Thelma Thompson is not a prison guard. He has not received a Rule Violation Report since his transfer.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However,

this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Eleventh Amendment Immunity

Any claim Chandler is asserting against the defendants in their official capacities is barred by The Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. Amend. XI. No State, its entities, or officials (in their official capacity) may be sued for damages in federal court, unless Congress has abrogated, or the State has waived, its sovereign immunity.

The Eleventh Amendment guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of the Univ. of Alabama v. Garrett*, 351 U.S. 356, 363 (2001) (citations omitted). A State's immunity encompasses "suits by citizens against their own States." *Garrett*, 351 U.S. at 363; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). The immunity granted to the State extends also to a state agency or department and cannot be avoided by suing an arm of the state or a state agency. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 318 (5th Cir. 2001).

The Eleventh Amendment precludes suits in federal court against state officials named in their official capacities because such suits are rightfully recognized as claims against the State. *See, e.g.*, *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984);*Will v. Michigan Dep't of State*

*Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment prohibition against suit applies to actions against state officials sued in their official capacity. *Waldrop v. Puckett*, 1998 WL 378308, 2 (N.D. Miss.) (*citing Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *Callaway v. Cowan*, 223 Fed. Appx. 353, 354 (5th Cir. 2007)(state prison officials sued in official capacity were entitled to Eleventh Amendment immunity).

A state can lose its Eleventh Amendment immunity only by waiver or when Congress, under Section 5 of the Fourteenth Amendment, chooses to abrogate the States' immunity. *Garrett*, 351 U.S. at 363 -64. Congress, however, has not abrogated the States' immunity for suits brought under §§ 1983, 1985 or 1986. *Howlett v. Rose*, 496 U.S. 356, 364 (1990); *Champagne v. Jefferson Parish Sherif 's Office*, 188 F.3d 312, 314 (5th Cir. 1999). Moreover, a state's immunity under the Eleventh Amendment covers not only whether it can be sued but also where it can be sued. For this reason, a state can waive immunity in its own courts without waiving Eleventh Amendment immunity in federal courts. *Sherwinski v. Peterson*, 98 F.3d 849, 851-52 (5th Cir. 1996). The State of Mississippi has expressed no intent to waive its Eleventh Amendment immunity from suit in federal court on any of the types of claims presented by the instant action. As such, Chandler's federal claims against these Defendants in their official capacities are barred by the Eleventh Amendment and will be dismissed.

**Retaliation**

The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). In this case, Exso Chandler must prove that he engaged in constitutionally protected activity, faced a

consequence – in this instance – false accusations of rule violations against him, and that such action was taken "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir. 1994), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir. 1987). Retaliation against a prisoner is actionable only if it is capable of deterring a prisoner of ordinary firmness from further exercising his constitutional rights. *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). An inmate must allege more than *de minimis* retaliation to proceed with a claim. *Morris v. Powell*, 449 F.3d 682, 684-85 (5th Cir. 2006). A single incident involving a minor sanction, is insufficient to prove retaliation. *Id.* at 685 (citing *Gibbs v. Kings*, 779 F.2d 1040, 1046 (5th Cir. 1986)). The relevant showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Edwards*, 51 F.3d at 580, *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). However, the court must focus on "whether there was "retaliation for the exercise of a constitutional right, separate and apart from the apparent validity of the underlying disciplinary report." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Also, prisoners "retain, in a general sense, a right to criticize prison officials," *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir.2004), and "[a] prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest." *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).

### Retaliation Claim Regarding Rule Violation Reports and Mail Tampering

In this case, interpreting the evidence in the light most favorable to the plaintiff, the four RVR's, written over a nine month period, as well as the refusal to send his personal mail, were in retaliation for Chandler's complaint to prison officials about Thelma Thompson harassing him using

Rule Violation Reports.[1] Chandler claims that he had asked Thelma Thompson to stop calling him "a jailhouse lawyer" in front of the other inmates because he feared that label would put him in poor standing with those inmates. Thompson continued to do so, and Chandler then complained to her supervisors. It is this complaint that Chandler believes motivated Thompson to write the RVR's against him. He claims that whenever he complained about her reference to him as a "jailhouse lawyer" or about the RVR's she issued, she would reply, "You're the jailhouse lawyer. Write it up." He alleges that he did not receive any RVR's in the months preceding those at issue in this case, and he also alleges that he has not received any since his transfer from Thompson's building at the Mississippi State Penitentiary.

Similarly, Chandler's allegation that Thompson prevented him from communicating with his family by refusing to pass his mail to the mail room states a claim of retaliation against Thompson. As Chandler has presented his allegations through sworn declaration, they constitute competent summary judgment evidence.

The sequence of events and Thompson's alleged behavior gives rise to an inference that she was attempting to punish Chandler for exercising his constitutional right to seek redress for grievances by complaining about her behavior to her superiors. The punishments he received, including loss of privileges, are sufficient to support a claim for retaliation. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). Resolving all inferences in favor of Chandler, the non-moving party, he has presented evidence of retaliation sufficient to overcome the instant motion for summary judgment.

---

[1] As to Chandler's claim that Thompson verbally harassed him, verbal harassment does not rise to the level of a constitutional claim, *McFadden v. Lucas*, 713 F.2d 143, 146, (5th Cir. 1983), and, in any event, would not keep a prisoner or ordinary firmness from exercising his constitutional rights. As such, this allegation fails to state a claim upon which relief could be granted and will be dismissed.

**Mail Tampering**

To prevail on his claim of mail tampering, Chandler must prove: (1) that the prison officials intentionally confiscated his outgoing mail, and (2) that the confiscation of the plaintiff's mail resulted in actual harm to him. *Wolff v. McDonnell*, 418 U.S. 539, 575-77 (1974), *Brewer v. Wilkerson*, 3 F.3d 816, 824-25 (5th Cir. 1993), *Lewis v. Casey*, 518 U.S. 343, 349 (1996), *Jones v. Greninger*, 288 F.3d. 322, 325 (5th Cir. 1999).

Chandler claims that Thelma Thompson tampered with his personal mail by refusing to forward to the mail room a card he wished to send to his daughter and granddaughter. The card had a picture of a teddy bear with hearts around it. Thompson refused to forward it to the mail room; she found the card to be contraband because it had drawings on it.

It is not clear whether Thompson refused to pass on Chandler's mail because of retaliation or because she believed the medium of the drawings violated prison rules. It is also unclear whether Thompson actually confiscated the card – or whether Chandler was able to send the card by asking another staff member to mail it for him. These issues of material fact preclude summary judgment on Chandler's claim of mail tampering.

**Failure to Investigate**

Chandler alleges that Thelma Thompson's supervisor, Clarissa Williams, failed to take corrective action after he notified her in January of 2012 of Thompson's actions. A supervisor may be liable for failure to supervise if: (1) the supervisor either failed to supervise the subordinate, (2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights, and (3) the failure to supervise amounts to deliberate indifference. *Goodman v. Harris Cnty.*, 571 F.3d 388 (5th Cir. 2009). Chandler's allegations are conclusory, and his allegations regarding failure to investigate do not state a claim under 42 U.S.C. § 1983. *Geiger v. Jowers*, 404 F.3d 371 (5th Cir 2005); *Dehghani*

*v. Vogelgsang*, 226 F.Appx. 404, 406 (5th Cir. 2007) (allegation that warden did not investigate grievance did not state a constitutional claim.) Chandler has not alleged facts tending to show that Williams' decision not to investigate his allegations caused Thompson's continued filing of RVR's against him; nor has he shown that such a failure amounted to deliberate indifference. For these reasons, Chandler's claim that defendant Clarissa Williams failed to supervise Thompson will be dismissed for failure to state a constitutional claim.

## Equal Protection

The Equal Protection Clause requires states to treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Only intentional discrimination violates the Equal Protection Clause. *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir. 1988). "Discriminatory purpose . . . implies more than intent as violation or as awareness of consequences[.] . . . It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group[.]" *Id.* (internal quotations, citations, and footnote omitted) (emphasis in opinion). A court reviewing a claim under the Equal Protection Clause must look only to whether the classification at issue bears a rational relationship to a legitimate public purpose which neither puts a suspect class at a disadvantage nor impinges upon the exercise of a fundamental right. *Plyler,* 457 U.S. at 217-18, 102 S.Ct. at 2394-95. Suspect classifications are only those which are likely to reflect deep seated prejudice rather than legislative rationality in pursuit of a legitimate objective. *Id.* at n. 14. A violation of the Equal Protection Clause occurs only when government action classifies or distinguishes between two or more persons or groups. *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir.1988). "[I]f the challenged government action does not appear to classify or

distinguish between two or more relevant persons or groups, then the action – even if irrational – does not deny them equal protection of the laws." *Brennan,* 834 F.2d at 1257 (emphasis added).

Chandler has made only a bare assertion that the defendants have violated his right to equal protection of the law. He has identified neither a suspect class to which he belongs, nor another similarly situated group or individual who has received better treatment that he has. As such, Chandler's equal protection claim will be dismissed.

### Qualified Immunity

The defendants argue that they are protected under the aegis of qualified immunity, which the court must evaluate using two criteria: (1) whether the defendant would have violated the plaintiff's rights on the facts alleged, and (2) whether that right was clearly established. *McClendon v. City of Columbia*, 305 F.3d 314, 322-23. (5th Cir. 2002)(*en banc*). As discussed in the section above regarding Chandler's retaliation claim, if Thompson indeed carried out all of the actions Chandler has alleged, then she violated his First Amendment right to seek redress for grievances. As such, Chandler has met the first prong of the test to defeat a claim of qualified immunity. Similarly, the law regarding retaliation was clearly established during the period relevant to this case, as all of the binding authorities cited above were decided prior to the incident itself. For these reasons, the defendants' claim of qualified immunity is without merit and will be overruled.

### Conclusion

For the reasons set forth above, the motion [Doc. 37] by the defendants for summary judgment will be granted in part and denied in part. The motion [Doc. 37] will be granted as to the plaintiff's claims regarding failure to investigate, equal protection, and failure to supervise, which will be dismissed with prejudice. As the plaintiff's failure to supervise claim pertained only to defendant Clarissa Williams, she will dismissed with prejudice from this case. The motion [Doc. 37] will be

denied as to the plaintiff's claims regarding retaliation and mail tampering by defendant Thelma Thompson, and those claims will proceed. All claims as to the defendants in their official capacities will be dismissed because the Eleventh Amendment provides immunity to state defendants acting in their official capacities. The defendants' defense of qualified immunity will be overruled. A judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 13th day of November, 2013.

                                         **/s/ Sharion Aycock**
                                         **U.S. DISTRICT JUDGE**